UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

PATRICK HENRY,

                  Plaintiff,    :

      - against -         :

MICHAEL J. ASTRUE, Commissioner of   :
Social Security,

               :

             Defendant.    
               :
- - - - - - - - - - - - - - - - - - - - X

07 Civ. 0957 (WCC)

**OPINION
AND ORDER**

**A P P E A R A N C E S :**

HENRY & REGAN-HENRY
**Attorneys for Plaintiff**
44 Church Street
White Plains, New York 10601

JOHN V. HENRY, ESQ.

       Of Counsel

LEV L. DASSIN
ACTING UNITED STATES ATTORNEY FOR
  THE SOUTHERN DISTRICT OF NEW YORK
**Attorneys for Defendant**
U.S. Department of Justice
86 Chambers Street, 3rd Floor
New York, New York  10007

SUSAN D. BAIRD, ESQ.
  Ass't United States Attorney

       Of Counsel

**CONNER, Senior D.J.:**

This is an action brought by plaintiff Patrick Henry pursuant to Title II of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), to review the final determination of defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"), determining that plaintiff was not disabled and therefore not entitled to disability insurance benefits under the Act.  Plaintiff has moved for remand for calculation of benefits, and the Commissioner has cross-moved for remand for further administrative proceedings.  We have reviewed the record and conclude, for the reasons stated below, that remand for further administrative proceedings is appropriate.  Accordingly, defendant's cross-motion for remand is granted, and plaintiff's motion is denied.


## BACKGROUND

I.   <u>Procedural History</u>

On October 6, 1998, the Social Security Administration ("SSA") denied plaintiff's application for disability and disability insurance benefits for the period December 23, 1980 to June 30, 1987. (Tr. 11-12.)[1]  The plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") J. Lawson Brown on November 12, 1999.  (*Id*.)  ALJ Brown issued a decision on January 5, 2000 determining that plaintiff was not entitled to a period of disability or disability insurance benefits.  (*Id*. 11-17.)  ALJ Brown found that plaintiff had a severe musculoskeletal impairment which did not meet the level of severity prescribed in the Regulations but which did prevent him from performing his past relevant work as a truck driver and warehouse worker.  (*Id*.

---

[1] "Tr." refers to the consecutively paginated administrative record filed by the Commissioner as part of his answer.

1

16.)  ALJ Brown also found that plaintiff retained the residual functional capacity to perform a full range of sedentary work activity prior to June 30, 1987 and therefore was not disabled.  (*Id*. 16-17.) The Appeals Council denied plaintiff's request for review of ALJ Brown's decision.  (*Id*. 3.) Plaintiff then filed a complaint in the Southern District of New York on October 18, 2000. (*Id*. 181.)

On July 22, 2002, United States Magistrate Judge Theodore H. Katz recommended that the case be remanded to the Commissioner for further proceedings to clarify the basis for the ALJ's opinion and further develop the record regarding plaintiff's vocational capacity.  (*Id*. 198.)  On March 30, 2004, United States District Judge Loretta A. Preska adopted Judge Katz's report.  (*Id*. 169-70.)  On remand, the Appeals Council remanded the case to ALJ Thomas P. Zolezzi.  (*Id*. 160, 173.)

A hearing was held on February 3, 2005 before ALJ Zolezzi in which plaintiff testified and Peter A. Manzi, Ed.D. ("Manzi"), a vocational expert ("VE"), provided testimony by telephone. (*Id*. 160.)  ALJ Zolezzi issued a decision on June 6, 2005, determining that plaintiff was not entitled to a period of disability or disability insurance benefits.  (*Id*. 166.)  ALJ Zolezzi found that plaintiff had a severe impairment which did not meet the level of severity prescribed in the Regulations.  (*Id*. 165.)  He also found that plaintiff did not have the capacity to perform his past relevant work, but retained the residual functional capacity to perform a wide range of sedentary work where he was able to change positions as needed, using a sit/stand option every 30 to 60 minutes.  (*Id*.)  Based on the testimony of the VE, ALJ Zolezzi determined that plaintiff had the residual functional capacity to perform other jobs existing in significant numbers in the national and local  economies and was not disabled at any time from December 23, 1980 through June 30, 1987.  (*Id*. 165-66.)  The Appeals Council denied plaintiff's request for review of ALJ Zolezzi's decision.  (*Id*. 138-40.)  Plaintiff then

2

filed this Complaint on February 9, 2007.

## II.   <u>Plaintiff's Personal History</u>

Plaintiff was born in 1941 and graduated from a high school which specialized in aviation. (*Id.* 261, 302.)  He was in the military from 1963 to 1966 and served in the Vietnam War.  (*Id.* 263.) Plaintiff worked as a truck driver and warehouse worker prior to his application for disability benefits.  (*Id.* 265-66.)  While at work in December 1980, he slipped on "particles" on the floor and landed at a strange angle, resulting in a back injury.  (*Id.* 31.)  Plaintiff filed for New York State Workers' Compensation benefits.  (*Id.*)  He stopped working as a truck driver and warehouse worker after this injury and his only attempt at work after that was a job with the United States Postal Service (the "Post Office") in 1985, which lasted two weeks.  (*Id.* 33.)  Plaintiff could not sit long enough to do a scanning job at the Post Office and he could not lift the bags to do a stacking job. (*Id.*)  The Post Office sent plaintiff for a physical examination and terminated him because he was not physically fit for the job.  (*Id.* 34.)

Plaintiff testified that during the relevant time period he had low back pain, pain down his right leg, numbness in his right leg and he could do no lifting.  (*Id.* 263-64.)  He also testified that he was depressed for a few years but he was not treated by a psychiatrist and he did not take any medication for depression.  (*Id.* 264, 271.)  Plaintiff testified that he took Naprosyn for pain at least once a day.  (*Id.* 273.)  He testified that, after 30 to 60 minutes of sitting or standing, he would get pain in his lower back going down his right leg and there was nothing he could do to relieve it except to sit or lie down.  (*Id.* 273-74.)  He testified that the heaviest thing he could lift was a pot.  (*Id.* 275.)

Plaintiff is married with three sons.  (*Id.* 263.)  His wife did the food shopping but he cooked.

3

(*Id.* 276-77.) He did not help out with household chores except to do laundry placed at the machine. (*Id.* 277-78.) He tried to get exercise, like walking, and he would walk around the mall for about a half hour and then sit down. (*Id.* 279.) Plaintiff belonged to a political party in which he tried to be active but he could not really participate. (*Id.* 280.) He attended his sons' athletic events and he read. (*Id.* 281-82.)


III. <u>**Medical History**</u>

During the period at issue, from December 23, 1980 though June 30, 1987, plaintiff had five examinations with his treating physician, Dr. Howard D. Balensweig. (*Id.* 161.) On January 9, 1981, plaintiff saw Dr. Balensweig and complained of numbness in his right foot that occurred when he drove. (*Id.* 127.) He told Dr. Balensweig that he was comfortable sitting and lying but needed to change position after a short time. (*Id.*) Dr. Balensweig's impression was that plaintiff had a recurrent lumbar sprain superimposed upon disc-degenerative disease, which was precipitated by an accident at work. (*Id.* 128.) Dr. Balensweig opined that plaintiff was permanently disabled from his occupation and should seek a "lighter occupation." (*Id.*) He prescribed Anaprox to plaintiff as a pain reliever. (*Id.* 129.)

Plaintiff next saw Dr. Balensweig on July 14, 1981, however no report of this visit is in the record. (*Id.* 161.) The next report from Dr. Balensweig is dated February 5, 1982. (*Id.* 125.) Plaintiff reported pain in his back radiating into both legs and numbness along the right leg. (*Id.*) Dr. Balensweig reported that plaintiff was now developing some neurological symptoms because of his lumbosacral sprain. (*Id.* 126.) Dr. Balensweig opined that plaintiff was disabled from his former occupation and was fit for primarily sedentary work. (*Id.*) He continued the Anaprox. (*Id.*)

Plaintiff's next visit with Dr. Balensweig was May 20, 1983. (*Id*. 122.) Plaintiff reported that he felt the same as when he last saw Dr. Balensweig and that a couple of weeks prior to the visit he developed an "acute attack" of pain which lasted five or six days. (*Id*.) Dr. Balensweig reported that plaintiff had a traumatic precipitation of disc-degenerative disease at L5-S1 with intermittent disc bulging, which explained the occasional pain running down plaintiff's right leg. (*Id*. 124.) Dr. Balensweig noted that plaintiff needed to resort to bedrest intermittently. He also noted that plaintiff had thinning of the right thigh which was evidence of some low-grade intermittent nerve root irritation. (*Id*.) He opined that plaintiff was partially disabled and unable to do any frequent bending or heavy lifting and at times unable to work at a "lighter job" because he had to resort to bedrest with acute attacks. (*Id*.)

Plaintiff saw Dr. Balensweig again on May 16, 1985. (*Id*. 119.) Plaintiff reported that his back had not changed and that "[h]is present limitations are one half-hour to an hour depending upon how he feels," standing for about 15 minutes and walking five to ten blocks. (*Id*.) He had pain with frequent bending and some pain if he tried to lift 15 pounds or if he tried lifting repetitively. (*Id*.) Dr. Balensweig reported that plaintiff had a chronic lumbosacral sprain with secondary arthritic changes and nerve root compression on the right side. (*Id*. 121.) He opined that plaintiff was disabled for any strenuous activity, prolonged sitting or frequent bending and should not lift more than 15 pounds. (*Id*.) He reported that plaintiff can sit for a half hour to an hour, should be allowed to change positions on occasion, can be on his feet part-time and should not bend more than occasionally. (*Id*.)

Plaintiff also saw a chiropractor from July 1982 through November 1983. (*Id*. 95-98, 94.) The chiropractor opined that plaintiff was disabled with respect to his ability to perform the duties

5

of his occupation but could perform sedentary work with vocational rehabilitation.  (*Id*. 97-98.)

IV.    **ALJ Zolezzi's Decision**

ALJ Zolezzi considered Dr. Balensweig's reports for the relevant time frame, from 1981 through 1985, and determined that no reported clinical findings met or equaled in severity the criteria for presumptive disability due to disorders of the spine in Listing 1.04.  (*Id*. 161.)  ALJ Zolezzi determined that plaintiff did not have the residual functional capacity to perform his past relevant work as a truck driver, truck driver helper or warehouse worker, but that he did have the residual functional capacity to perform a wide range of sedentary work.  (*Id*. 163-65.)

ALJ Zolezzi also considered plaintiff's testimony.  He noted that plaintiff had not worked since 1980 except for an attempt to work for the Post Office in 1985 which he was unable to do because he did not pass a physical examination.  (*Id*. 162.)  Plaintiff testified that he could not lift more than 5 to 10 pounds, had trouble walking, had pain, and lost control sometimes when driving because his leg went numb.  (*Id*.)  He considered factors such as daily activities, objective findings, the intensity, frequency and duration of symptoms, the frequency of treatment, the use of medications, other forms of treatment and the consistency of his allegations and concluded that plaintiff's allegations were not fully credible.  (*Id*.)  For example, plaintiff was advised by his physician to get some physical activity during this time, especially walking, he reported taking care of his baby while his wife worked and working on a local political committee, although he could not go door-to-door.  (*Id*. 162-63.)

ALJ Zolezzi also considered that Dr. Balensweig, whom plaintiff identified as his treating physician, had only examined plaintiff 5 times during the relevant period and each examination was

for plaintiff's Workers' Compensation claim.  (*Id*. 162.)  He noted that plaintiff also saw Dr. Arnold Belgraier on December 23, 1980 and for a follow-up visit on January 3, 1981.  (*Id*.)  Dr. Belgraier diagnosed plaintiff with a low back strain with possible disc disease and estimated that he would be out of work for two weeks.  (*Id*.)

ALJ Zolezzi noted that while Dr. Balensweig consistently opined that plaintiff could not perform his past work, he repeatedly advised that plaintiff should seek a lighter occupation and recommended vocation rehabilitation.  (*Id*. 163.)  Therefore, he noted that Dr. Balensweig's findings did not support plaintiff's allegations of "virtual debility."  (*Id*.)  ALJ Zolezzi also considered the observations of plaintiff's chiropractor, Charles Krasner, although he noted that chiropractors are not an acceptable medical source to establish impairment, diagnosis or residual functional capacity. (*Id*.)  However, he noted that Dr. Krasner's opinion and observations were consistent with those of Dr. Balensweig in concluding that plaintiff could not perform his past work but could be trained for lighter work.  (*Id*.)

ALJ Zolezzi noted that sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files and small tools.  (*Id*.)  He also noted that jobs are sedentary even though walking and standing are required occasionally.  (*Id*.)  ALJ Zolezzi determined that plaintiff was able to perform a wide range of sedentary work where he would be able to change positions as needed, using a sit/stand option every 30 to 60 minutes; would perform occasional but not frequent bending; would not be required to lift over 15 pounds and would be able to stand up to 15 minutes.  (*Id*.)  He determined that these findings were supported by the opinions of the treating physician.  (*Id*.)  ALJ Zolezzi noted, that although in 1983 Dr. Balensweig opined that plaintiff needed bedrest during acute attacks, no other acute attacks were documented during the six

years at issue other than the one that plaintiff reported during his May 1983 visit.  (*Id*. 164.)  ALJ Zolezzi concluded that "the rarity of such an event during this period does not significantly limit [plaintiff's] residual functional capacity."  (*Id*.)

ALJ Zolezzi noted that once he determined that plaintiff could not return to his past relevant work because it involved medium or heavy exertion, the burden shifted to the Commissioner to show that there were other jobs existing in significant numbers in the national economy which plaintiff could still perform considering his age, education, vocational history and residual functional capacity.  (*Id*.)  Plaintiff was 39 to 45 years of age during the relevant period, which is considered a younger individual, with a high school education.  (*Id*.)  According to the vocational expert, Dr. Manzi, plaintiff's past relevant work was semi-skilled and did not provide him with any transferable skills.  (*Id*.)

ALJ Zolezzi asked Dr. Manzi to assume that an individual with that vocational profile could perform sedentary work where he was able to change positions as needed, using a sit/stand option every 30 to 60 minutes; perform occasional but not frequent bending; is not required to lift over 15 pounds and is able to stand up to 15 minutes.  (*Id*.)  Dr. Manzi testified that, adjusting the job base data from the Bureau of Labor Statistics to account for the years since plaintiff last worked, there were jobs in significant numbers in the national and local economies that such an individual could perform.  (*Id*.)  These jobs included ticket seller (700 jobs in the local economy and 83,000 in the national economy), addresser (260 jobs locally and 39,000 nationally) and call-out operator (248 locally and 39,400 nationally).  (*Id*. 165.)  ALJ Zolezzi then determined that there were a significant number of jobs in the national and local economies that plaintiff retained the residual functional capacity to perform.  (*Id*.)

Dr. Manzi derived his data from the United States Department of Labor's Dictionary of Occupational Titles ("DOT") and the New York State Department of Labor's occupational outlook for the Hudson Valley Region, and he had also observed how these jobs were performed. (*Id*. 164.) ALJ Zolezzi found no merit in plaintiff's argument that Dr. Manzi had not interviewed him because Dr. Manzi testified in response to the assumptions ALJ Zolezzi gave him. (*Id*.) It is the function of the ALJ, and not the vocational expert, to make a residual functional capacity assessment of plaintiff and posit a hypothetical to the expert based upon that assessment. (*Id*. 164-65.)

## ANALYSIS

### I.      Standard of Review

A court's review of an ALJ's decision regarding disability benefits is limited to determining whether the decision is based on correct legal principles and is supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Accordingly, a court reviewing a final decision by the Commissioner must first determine whether the correct legal standard was applied. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). If the Commissioner failed to apply the correct legal standard in making a determination, the reviewing court must not defer to the Commissioner's decision. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal.") (internal citation omitted).

If the correct legal standard has been applied, the court must determine whether the decision is supported by substantial evidence. *See Tejada*, 167 F.3d at 773. Substantial evidence in this context has been defined as "'more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938));

*see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  "The substantial evidence standard applies

not only to the Commissioner's findings of fact, but also to his inferences and conclusions."  *Flors*

*v. Massanari*, 2002 WL 100631, at *3 (S.D.N.Y. Jan. 25, 2002).  To determine whether the findings

are supported by substantial evidence, the reviewing court is required to examine the entire record.

*Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam).  Where substantial evidence

exists to support the Commissioner's final decision, that decision must be upheld, even where there

is also substantial evidence supporting the claimant's position.  *See Alston v. Sullivan*, 904 F.2d 122,

126 (2d Cir. 1990); *see also* 42 U.S.C. § 405(g) ( "The findings of the Commissioner . . . as to any

fact, if supported by substantial evidence, shall be conclusive . . . .").  The role of the reviewing court

is therefore "quite limited and substantial deference is to be afforded the Commissioner's decision."

*Burris v. Chate*r, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996).

"The court shall have power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A court may remand for

further development of the evidence "'[w]here there are gaps in the administrative record or the ALJ

has applied an improper legal standard.'"  *Rosa*, 168 F.3d at 82-83 (citing *Pratts v. Chater*, 94 F.3d

34, 39 (2d Cir. 1996); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).


## II.    <u>The Act</u>

The Act defines the term "disability" as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Regulations of the Commissioner set forth a five-step analysis that must be used in evaluating a disability claim.  *See* 20 C.F.R. § 404.1520(a)(4).

> The Court of Appeals for the Second Circuit has described this five-step process as follows:
> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical capacity to do basic work activities.
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work, which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Carrington v. Barnhart*, 2005 WL 2738940, at *5 (S.D.N.Y. Oct. 19, 2005) (quoting *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000)).  The claimant bears the burden of proof on all elements except the final one.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000).  If the claimant satisfies this burden and thereby establishes a prima facie case, the burden shifts to the Commissioner to prove the fifth element.  *See Carrington*, 2005 WL 2738940, at *5 (citing *Rivera v. Schweiker*, 717 F.2d 719, 722-23 (2d Cir. 1983)).

When determining a disability claim under the five-step analysis, the Commissioner is required to examine the following four factors: "(1) the objective medical facts; (2) diagnoses or

11

medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur*, 722 F.2d at 1037 (internal citations omitted).  Moreover, in assessing medical evidence, the ALJ must distinguish between treating and non-treating physicians and lend a treating physician's opinion "controlling weight when that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . .'"  *Carrington*, 2005 WL 2738940, at *6 (quoting 20 C.F.R. § 416.927(d)(2)).

It is clear from the record that the ALJ applied the correct legal standards, performing the five-step analysis and giving the appropriate weight to the opinions and reports of the various medical professionals.  Plaintiff challenges the ALJ's determination that he was not disabled under the Act because he could perform sedentary work.  Under the Act, an individual who can no longer perform his past relevant work would not be found disabled if he could still perform work which exists in significant numbers in either the region where the plaintiff lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A).

## III.    Legal Standard Applied

### A.    The Five-Step Procedure

The ALJ correctly determined the plaintiff's residual functional capacity using the opinions of plaintiff's treating physician, Dr. Balensweig.  *See* Tr. 163; *Shaw*, 221 F.3d at 134 (quoting 20 C.F.R. § 416.927(d)(2)) (The treating physician rule "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings

and not inconsistent with other substantial record evidence."). Dr. Balensweig's opinions consistently concluded that plaintiff was disabled from his past work but could perform sedentary work. Specifically, Dr. Balensweig noted that plaintiff's limitations were that he not lift more than 15 pounds, should change positions after sitting for a half hour to an hour, be on his feet only part-time and not bend more than occasionally. (Tr. 121.) Dr. Balensweig also opined that at times plaintiff was unable to work at a lighter job because he had to resort to bedrest with acute attacks. (*Id*. 124.) ALJ Zolezzi considered all this when he determined plaintiff's residual functional capacity and posed the hypothetical question to Dr. Manzi. (Tr. 163-64.)

During the hearing, ALJ Zolezzi asked if Dr. Manzi studied the record regarding plaintiff's vocational history and Dr. Manzi stated that he had. (Tr. 287.) Dr. Manzi also heard plaintiff's testimony regarding his work history. (Tr. 288.) ALJ Zolezzi then presented a hypothetical person to Dr. Manzi in order for Dr. Manzi to determine if jobs existed which this person could perform. He told Dr. Manzi to assume an individual between the ages of 39 to 46 years with a twelfth-grade education who could perform sedentary work with the following non-exertional impairments: he would need to change positions as needed using a sit/stand option about every 30 to 60 minutes, he was able to bend occasionally but not frequently and he could not lift over 15 pounds. (Tr. 289-90.) Dr. Manzi testified that this person could not perform the work of a truck driver and that his past work as a truck driver would not have provided him with any transferable skills. (*Id*. 290-91.)

Dr. Manzi testified that plaintiff could perform the job of a ticket seller. (Tr. 291.) He explained that this job was classified as light because there was constant reaching, handling and fingering but the person could change positions every 30 to 60 minutes. (*Id*.) Dr. Manzi also testified that plaintiff could perform work as an addresser or a call-out operator, which are sedentary,

unskilled jobs.  (Tr. 293-94.)  Dr. Manzi gave the number of positions available in the national and local economies (adjusted to reflect the number available during the relevant time period when plaintiff claimed disability) and then plaintiff's attorney was permitted an opportunity to question Dr. Manzi.

Plaintiff argues that the ALJ attempted to "erode the strictures of the 'treating physician rule'" by muddling step four with step five.  (Pl. Mem. Supp. Mot. Remand Calc. Benefits at 10.) The Supreme Court has described the process for the determination at step five in *Heckler v. Campbell*, 461 U.S. 458 (1983).

> [I]n determining whether a claimant can perform less strenuous work, the Secretary must make two determinations. She must assess each claimant's individual abilities and then determine whether jobs exist that a person having the claimant's qualifications could perform. The first inquiry involves a determination of historic facts, and the regulations properly require the Secretary to make these findings on the basis of evidence adduced at a hearing. . . .  The second inquiry requires the Secretary to determine an issue that is not unique to each claimant-the types and numbers of jobs that exist in the national economy. This type of general factual issue may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing.

*Id*. at 467-68.

Under step four of the five-step process, if the claimant's impairment is not listed in the Regulations, the ALJ then asks whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  The burden is on the plaintiff during this step. Considering the medical evidence and recommendations from plaintiff's treating physician and plaintiff's testimony, ALJ Zolezzi determined that plaintiff did not have the residual functional capacity to perform his past work as a truck driver and warehouse worker.

Having reached the determination that claimant can not perform his past relevant work, the ALJ then moves to step five in which he determines whether there is other work that the claimant

can perform.  The ALJ bears the burden of proof on this last step.  ALJ Zolezzi can meet this burden

by using the testimony of a vocational expert.  *See Nelson v. Bowen*, 882 F.2d 45, 48 (2d Cir. 1989).

Presenting the limitations found by plaintiff's treating physician to the VE, Dr. Manzi, ALJ Zolezzi

inquired whether there was work that plaintiff could perform with these limitations.  We do not see

how ALJ Zolezzi either ignored the treating physician rule or muddled the five-step analysis.  We

find that his analysis is in conformity with the five-step process as described by the Regulations, the

Supreme Court and the Second Circuit.  *See* 20 C.F.R. § 404.1520(a)(4); *Carrington*, 2005 WL

2738940, at *5 (citing *Shaw*, 221 F.3d at 132).


**IV.**    **Substantial Evidence**

   **A.**    **The Commissioner's Burden at Step Five**

   Plaintiff next argues that the Commissioner did not meet his burden at step five of showing

that plaintiff was capable of engaging in sedentary work.  (Pl. Mem. Supp. Mot. Remand Calc.

Benefits at 11-12.)


      **1.**    **Sedentary Work**

   Plaintiff argues that sedentary work requires that the claimant be able to lift up to ten pounds,

stand and walk up to two hours and sit approximately six hours during an eight-hour work day.  (*Id.*

at 12.)  Although this is true,[2] ALJ Zolezzi modified the requirements of a sedentary position to

---

   [2] "According to the SSA, sedentary work generally involves up to two hours of standing
or walking and six hours of sitting in an eight-hour work day. . . . Sedentary work also involves
lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools."  *Curry*, 209 F.3d at 123 (internal quotation marks and citations
omitted; emphasis omitted).

account for plaintiff's limitations, as explained by plaintiff's treating physician, and inquired from Dr. Manzi whether there were jobs meeting the modified description. *See Nelson*, 882 F.2d at 48 (stating that, because the medical-vocational grid does not apply to claimants who cannot do sedentary work, those claims must be evaluated on an individualized basis and the Secretary's burden can be met only by calling a vocational expert to testify as to the plaintiff's ability to perform some particular job). The medical evidence from plaintiff's treating physician supports ALJ Zolezzi's finding that plaintiff was able to do modified sedentary work.[3]

Plaintiff also argues that ALJ Zolezzi excluded plaintiff's failed attempt at employment with the Post Office in 1985. (Pl. Mem. Supp. Mot. Remand Calc. Benefits at 12.) However, this past work attempt was not relevant to ALJ Zolezzi's inquiry about modified sedentary work. Assuming that the position at the Post Office was sedentary, it was not a position that Dr. Manzi testified a person with plaintiff's limitations would be able to perform. Plaintiff testified that he was not able to sit long enough for this job and the job required lifting up to sixty pounds. (Tr. 268.) This description does not match plaintiff's residual functional capacity according to ALJ Zolezzi's

---

[3] Plaintiff argues that the ALJ ignored and failed to adhere to Magistrate Judge Katz's Recommendation. (Pl. Mem. Supp. Mot. Remand Calc. Benefits at 8-10.) Judge Katz noted that Dr. Balensweig's finding that plaintiff could not sit for more than a half hour to an hour was not consistent with his recommendation that plaintiff seek sedentary work. (Tr. 192.) Judge Katz recommended that on remand the ALJ should reconcile the apparent contradiction, and if necessary contact Dr. Balensweig for clarification. (*Id.* at 193.) He also recommended that if the ALJ finds that plaintiff could sit for only 30 minutes to an hour, the Commissioner may call a vocational expert to satisfy the burden of showing that plaintiff could perform some work in the national economy in light of the reduced range of sedentary employment he could perform. (*Id.* at 193-94.) We fail to see how ALJ Zolezzi ignored Judge Katz's Recommendation. ALJ Zolezzi gave controlling weight to Dr. Balensweig's findings regarding plaintiff's limitations and determined that plaintiff had the residual functional capacity to perform a reduced range of sedentary employment despite those limitations. He then called upon a vocational expert, Dr. Manzi, to testify that there was work in the national economy that plaintiff could perform.

description.  Therefore, plaintiff's failed attempt to work at the Post Office was not relevant to the determination of whether he could perform modified sedentary work and whether that work existed in the national and local economies.

### 2.    A Significant Number of Jobs in the National Economy

Plaintiff argues that the Commissioner failed to meet his burden that there exist a significant number of jobs in the national economy that plaintiff could perform.  (Pl. Mem. Supp. Mot. Remand Calc. Benefits at 13.)  Plaintiff argues that three jobs is not a significant number of jobs.  (*Id*. at 23.) Although Dr. Manzi gave three examples of jobs that plaintiff could perform, the number of actual positions available for plaintiff in the local and national economies is significant.  Dr. Manzi testified that there were 1,208 jobs in the local economy that plaintiff could perform.  While there is no specific number that is considered significant, courts in this Circuit and others have found similar numbers to be significant.  *See Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 positions were within the parameters of a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 positions was a significant number of jobs); *Wright v. Chater*, 969 F. Supp. 143, 148 (W.D.N.Y. 1997) (1,700 jobs in the region was a significant number).

In *Renna v. Barnhart*, 2007 WL 602395, at *5 (E.D.N.Y. Feb. 21, 2007), the court was mindful that the ALJ's step-five determination was supported by evidence of a single job, but that job existed in sufficient numbers in the region (1,617) to qualify as work existing in the national economy.  The court noted that "the Social Security Act affords benefits only to those who cannot 'engage in *any* other kind of substantial gainful work which exists in the national economy.'"  *Id*. (emphasis in original) (quoting 42 U.S.C. § 423(d)(2)(A); *Dumas v. Schweiker*, 712 F.2d 1545, 1553

17

(2d Cir. 1983) (affirming step-five determination based on evidence of only one job)).  Thus, the court determined that the expert's testimony satisfied the Commissioner's step-five burden and supported the ALJ's determination that the plaintiff could perform jobs existing in the national economy.  *Id*.  Because the ALJ's determination that there existed substantial gainful work is supported by Dr. Manzi's testimony that there existed 1,208 jobs in the local economy, the Commissioner's burden is satisfied.

### 3.      The ALJ's Hypothetical Question to the VE

Plaintiff also argues that the hypothesis ALJ Zolezzi presented to Dr. Manzi did not include medical evidence in the record, such as his difficulty walking and standing, his need for bedrest during acute attacks, that he could only be on his feet part-time, that he experienced heaviness and numbness in his legs, that he should not lift 15 pounds or less on a repetitive basis, that he could sit for a half hour to an hour and should be allowed to change position on occasion, that he walks with a marked hurry-off limp, that he has some spasm in his toes, that he uses a back support and that he has neurological deficits bilaterally.  (Pl. Mem. Supp. Mot. Remand Calc. Benefits at 22.)  Plaintiff argues that if this history were given to Dr. Manzi he would have been aware of plaintiff's specific limitations.  (*Id*. at 23.)

When utilizing the testimony of a vocational expert, the ALJ must present a hypothesis that incorporates all of plaintiff's impairments.  *Caruso v. Astrue*, 2008 WL 1995119, at *5 (N.D.N.Y. May 6, 2008) (citing *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002))[4].  If the ALJ does not "'include all of a claimant's impairments, limitations and restrictions, or is otherwise

---

[4] It appears that the court in *Caruso* incorrectly cited *Kuleszo* as "*Juleszo*."

inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.'" *Id*. (quoting *Kuleszo*, 232 F. Supp. 2d at 57).

As to plaintiff's argument that he needed bedrest during acute attacks, ALJ Zolezzi did not consider this because he noted that there was only one attack documented in the medical record for the relevant time period and that would not significantly limit plaintiff's residual functional capacity. We find that the ALJ's decision to exclude this from the hypothetical was supported by substantial evidence.

At the hearing, ALJ Zolezzi instructed Dr. Manzi to assume the claimant

was 39 years of age at his alleged date of disability, and he was 46 years of age at . . . his date last insured . . . . Assume that he had a 12th grade . . . education. . . . And assume that . . . [b]ack at that time, [he] could perform sedentary work, but was limited by the following non-exertional impairments. Any job that he had has to be one that he would have been able to have changed positions as needed, using a sit, stand option with a change about ever 30 to 60 minutes. It would have to be one that . . . required only occasional, but not frequent bending, and no lifting over 15 pounds, which would cover that sedentary portion any way. . . . [A]nd he has no transferable semi – or skills.

(Tr. 289-91.) As far as plaintiff's argument that ALJ Zolezzi did not include in the hypothesis the fact that plaintiff could only be on his feet part-time, that is accounted for in the ALJ's requirement of a sit/stand option with change every thirty to sixty minutes.

Therefore, the only remaining evidence that plaintiff claims was missing from the hypothetical is that he had difficulty walking and standing, experienced heaviness and numbness in his legs, walked with a marked hurry-off limp, had some spasm in his toes, used a back support and had neurological deficits bilaterally. However, the fact that plaintiff had difficulty walking and standing, experienced heaviness and numbness, walked with a limp, and had spasms and neurological deficits were symptoms which supported Dr. Balensweig's and the ALJ's determination

19

that the plaintiff needed a sit/stand option with change every 30 to 60 minutes.  These particular symptoms need not be included in the hypothetical; they were not included in the limitations that Dr. Balensweig listed for plaintiff.  *See Gittens v. Astrue*, 2008 WL 2787723, at *7 (S.D.N.Y. June 23, 2008) (determining that the hypothetical effectively assumed the evidence as ultimately found and, therefore, the expert's response constituted substantial evidence to support a conclusion of no disability).  The hypothetical must present the limitations and impairments of the claimant, which it did.

As for the back brace, nowhere in Dr. Balensweig's reports does he mention this limitation. This aside, plaintiff's attorney asked Dr. Manzi if his opinion would change if Dr. Manzi considered that the claimant had difficulty walking or had to use a back brace.  (Tr. 325-26.)  Dr. Manzi testified that his opinion would not change because the jobs required minimal walking and he did not think the back brace would be a factor because the jobs did not require significant lifting, bending or moving.  (*Id*. 325-27.)  The ALJ made a determination about plaintiff's residual functional capacity based on substantial evidence in the record, which he then presented to the VE in the hypothetical. The VE's opinion that there existed substantial gainful work for a person with those limitations provided the ALJ with substantial evidence to support the Commissioner's determination at step-five.


## V.   <u>Due Process</u>

Plaintiff argues that he was denied due process because Dr. Manzi did not appear to testify in person and copies of the exhibits that Dr. Manzi relied on were not furnished to plaintiff prior to, during or after the hearing.  (Pl. Mem. Supp. Mot. Remand Calc. Benefits at 15.)  Plaintiff first saw

the documents Dr. Manzi used when he received the transcript of the hearing in May 2007.  (*Id.* at 16.)  He did not have an opportunity to review these exhibits and submit any comments to ALJ Zolezzi before ALJ Zolezzi issued the determination on June 6, 2005.  (*Id.*)  Plaintiff also argues that the Appeals Council denied him due process because it confused the issue.  The Appeals Council noted that plaintiff had access to exhibits 1D, 1E and 2F-6F and, therefore, he was not denied due process.  (*Id.*)  However, these are not the documents Dr. Manzi used during his testimony.  (*Id.*)

In an individualized evaluation, the claimant has the opportunity either through medical, vocational or other testimony to rebut the evidence of the Secretary or to prove further his inability to perform sedentary work.  *See Nelson*, 882 F.2d at 48.  "[A] disability benefits claimant has a right to cross examine the author of an adverse report and to present rebuttal evidence."  *Townley*, 748 F.2d at 114.  Plaintiff was given the opportunity to cross examine Dr. Manzi during the hearing; the fact that Dr. Manzi participated by telephone did not deprive plaintiff of this right.   However, plaintiff was not provided with the evidence that Dr. Manzi relied upon in reaching his determination and, therefore, he was denied a proper opportunity to cross examine Dr. Manzi and to rebut Dr. Manzi's evidence.  This is particularly so because Dr. Manzi relied on current data about jobs in the national and local economies which he adjusted to reflect an estimate of the number of jobs available during the relevant time of plaintiff's claimed disability.  Plaintiff was not provided with this data and could not properly challenge Dr. Manzi's calculations and methods.  Dr. Manzi also relied on the DOT and other publications for the job descriptions which he indicated plaintiff could perform.  However, without these documents before him, plaintiff's attorney could not properly cross examine Dr. Manzi on the jobs described and plaintiff's ability to perform them, particularly because plaintiff's attorney now argues that Dr. Manzi did not use reliable sources of data.  (*See* Pl. Mem.

21

Supp. Mot. Remand Calc. Benefits at 23.)

Plaintiff also argues that Dr. Manzi did not explain the specific duties of each position and relate these duties to plaintiff's limitations.  (*Id*.)  Plaintiff further argues that Dr. Manzi relied on records from 2004 to determine the available job opportunities, even though he testified that records for the relevant time period were available in the archives.  (*Id*. at 20.)  Dr. Manzi then adjusted the data by a 20% reduction without testimony or evidence concerning how he determined that the reduction should be 20%.  (*Id*.)  Plaintiff was not denied the opportunity to ask these questions of the expert, but he was denied an opportunity to effectively cross examine the expert and present rebuttal evidence because he did not have the evidence Dr. Manzi relied on.  For this reason, we find that plaintiff was denied due process.

## VI.    <u>Remand</u>

Defendant argues that remand is appropriate in this case to proffer the post-hearing vocational evidence to plaintiff for his review, consideration and comment, and to issue a new decision.  (Def. Mem. Opp. Mot. Remand Calc. Benefits & Supp. Cross-Motion Remand at 12.) Defendant admits that this evidence was never proffered to plaintiff's counsel and that the Appeals Council misunderstood which documents were proffered when it rendered its decision.  (*Id*. at 13.) Defendant argues that this case is not one in which remand for award of benefits is appropriate because here the record supports the Commissioner's decision and remand is required only to correct the error of failing to proffer post-hearing evidence to plaintiff.  (*Id*. at 14.)

Plaintiff argues that denial of due process cannot be cured through a remand.  (Pl. Reply Mem. Fur. Supp. Mot. Remand Calc. Benefits & Opp. Cross-Mot. Remand at 4.)  However, this

Circuit recognizes that remand is appropriate when the ALJ violates due process rights.  *See Townley*, 748 F.2d at 114; *Gullo v. Califano*, 609 F.2d 649, 650 (2d Cir. 1979).  Therefore, we agree with the Commissioner that remand for further proceedings is appropriate to provide plaintiff with the necessary due process.

Plaintiff also argues that remand for additional evidence is appropriate only upon a showing that there is new evidence that is material and there was good cause for the failure to incorporate it in the prior proceeding.  (Pl. Reply Mem. Fur. Supp. Mot. Remand Calc. Benefits & Opp. Cross-Mot. Remand at 5 (quoting 42 U.S.C. § 405(g)).)  Sentence six of 42 U.S.C. § 405(g) provides, in pertinent part: "The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, this is not a remand for consideration of new evidence as contemplated by sentence six of 42 U.S.C. § 405(g).  Remand is available under both sentence six and sentence four of 42 U.S.C. § 405(g).  *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  This evidence is not new evidence because it was included in the record, the error was in not proffering the evidence to plaintiff at the hearing and prior to the ALJ's decision.  Therefore, the remand is appropriate under sentence four.

Plaintiff further argues that the prolonged period of time involved in processing his claim, over approximately ten years, "is a compelling factor *per se* for an immediate award and calculation of benefits."  (Pl. Mem. Supp. Mot. Remand Calc. Benefits at 17-18 (emphasis in original).)  The Second Circuit has held that, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits."  *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir.

1996).  However, the Second Circuit has also noted that when reviewing an ALJ's decision at step five, rather than step four, the disability has been shown and the burden shifts to the Commissioner to prove the claimant is capable of working.  *Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005). In *Butts*, the court held that the  plaintiff made his showing of disability, and the Commissioner failed to meet her burden of rebuttal because she did not present evidence from a vocational expert at step five. *Id*. at 104.  The district court had remanded for further proceedings rather than a benefits calculation and the Second Circuit deemed that was not an abuse of discretion, but stated that the ordering of a benefits calculation was "hardly out of the question" in cases where the claimant is entitled to benefits absent the Commissioner's providing expert vocational testimony about the availability of appropriate jobs. *Id*.  The court ordered that on remand the proceedings before an ALJ must be completed within 120 days. *Id*. at 106.

In this case, the Commissioner did present evidence from a VE to suport the determination at step five that plaintiff was not disabled.  However, plaintiff was denied due process because he was denied the opportunity to properly rebut this evidence.  We find that the appropriate remedy is to remand for further proceedings providing plaintiff with due process as required.

The Commissioner suggests that on remand plaintiff's counsel be given a reasonable period of time to submit any comments on the vocational evidence contributed by Dr. Manzi and that the ALJ complete administrative proceedings within 120 days of a court order remanding the case to the Commissioner.  (Def. Mem. Opp. Mot. Remand Calc. Benefits & Supp. Cross-Motion Remand at 17.)  However, we do not agree that post-hearing comments on the VE evidence would provide plaintiff with due process.  Therefore, the motion for remand for further administrative proceedings is granted to the following extent: plaintiff shall be afforded an opportunity to review and consider

24

the evidence Dr. Manzi relied upon and shall then be afforded an opportunity to crossexamine Dr. Manzi on that evidence and present rebuttal evidence at a hearing before the ALJ.  The evidence shall be presented to plaintiff within thirty (30)  days of the issuance of this Order and the proceedings before an ALJ must be completed within 120 days of the issuance of this Order.

## CONCLUSION

For all the foregoing reasons, the Court grants defendant Commissioner's cross-motion for remand (Doc. # 6) for further administrative proceedings and denies plaintiff's motion for remand (Doc. # 4) for calculation of benefits.

SO ORDERED.

Dated: White Plains, New York
      December 17, 2008

_William C. Conner_
Sr. United States District Judge